UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

    v.                                                    CASE NO. 3:26-cr-15-JEP-PDB

ANNY CHEN
  a/k/a Qianhua Chen
SHA XIE
LINLIN WANG
JIAWEI CHEN
  a/k/a Gary
YAFENG DENG
HAILING FENG
  a/k/a Helen Feng
KIAH HOLLY
XIONGHU FANG
TAO FAN
JADEN BULLION
KIN MAN CHEOK
  a/k/a Bruce

## UNITED STATES' MEMORANDUM REGARDING DETENTION

    The United States respectfully submits this memorandum in support of its

position each of the following defendants be detained in this matter: Anny Chen

("Chen"), Sha Xie ("Xie"), Linlin Wang ("Wang"), Hailing Feng ("Feng"), Jiawei

Chen ("J. Chen"), Yafeng Deng ("Deng"), Tao Fan ("Fan"), Xionghu Fang

("Fang"), and Kin Man Cheok ("Cheok").  These defendants have all been charged

with one or more felony offenses in this case.  Defendant Chen has been charged

with marriage fraud, conspiracy to commit marriage fraud, and conspiracy to bribe a

public official.  Defendants Feng and Cheok have been charged with conspiracy to commit marriage fraud and conspiracy to bribe a public official.  Defendant Wang has been charged with marriage fraud and conspiracy to commit marriage fraud. Defendants Xie, J. Chen, Deng, Fan, and Fang have each been charged with conspiracy to commit marriage fraud.

For the reasons set forth below, the defendants should be detained because they are each a flight risk, and no combination of conditions can mitigate these risks.

## I.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e).  Risk of flight must be proven by a preponderance of the evidence, *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *United States v. Quartermaine*, 913 F.2d 910, 915-17 (11th Cir. 1990).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g).  If the Government establishes that "no condition or combination of conditions will

2

reasonably assure the appearance of the person as required and the safety of any other person and the community," the defendant must be ordered detained. 18 U.S.C. § 3142(e)(1).

## II.    Argument

The Court should order that the defendants be held without bond pending the trial of this matter because no condition or combination of conditions will reasonably assure their appearance as required.  18 U.S.C. § 3142(e)(1).  The statutory factors enumerated at 18 U.S.C. § 3142(g) strongly support this conclusion.  First, a summary of the allegations in the Indictment:

*Marriage fraud*:  Each of these defendants are among 11 defendants alleged to have engaged in a conspiracy between at least March 2024 and February 2025 to recruit United States citizens, preferably members of the armed forces, to enter sham marriages to Chinese nationals for the purpose of evading immigration laws and illicitly obtaining lawful permanent resident status for the Chinese nationals.  The sham marriages took place around the country, including in Florida, as well as in New York, Connecticut, and Nevada.  In order to create the illusion of a real marriage, the conspirators would take photographs of the couples to create evidence that could be presented to immigration authorities to suggest that the marriages were legitimate, and the couples were in loving, committed relationships.  In reality, the conspirators had agreed to a payment plan whereby the United States citizen spouse would receive a cash payment up front for marrying the Chinese national, a second

payment when legal immigration status was obtained, and a final payment after the divorce.  Further, the investigation has revealed that conspirators who were military servicemembers were urged to obtain military dependent identification cards for their Chinese spouses, which would enable them to access U.S. military facilities around the world.

Chen is alleged to have been the organizer of the scheme.  She is also separately charged with aiding and abetting a sham marriage, which occurred in Florida.  Feng is alleged to have been Chen's employee who assisted with translating for Chen and other conspirators, as well as with collecting documents from the American "spouses" to be used for the immigration applications.  Xie, Wang, Fan, Fang, J. Chen, and Cheok are alleged to have been Chinese national clients of Chen's, who each married an American in order to obtain legal permanent resident status.  Deng is an active-duty Navy servicemember who married a Chinese national in exchange for payment.  Deng subsequently obtained a military dependent ID for his spouse, and attempted to recruit others to join the conspiracy based on electronic messages obtained through the investigation.

In related cases, Raymond Zumba (Case No. 3:25-cr-247-HES-LLL), Brinio Urena (Case No. 3:25-cr-173-HES-PDB), Morgan Chambers (Case No. 3:25-cr-261-HES-PDB), and Jacinth Bailey (Case No. 3:25-cr-262-BJD-PDB), all servicemembers in the Navy, have pleaded guilty to charges related to the same scheme.

*Bribery*: The Indictment also alleges that defendants Chen, Feng, and Cheok conspired with others to bribe a public official.  Specifically, in January 2025, a confidential source who was active-duty Navy reported to law enforcement that Navy reservist Raymond Zumba had offered to bribe the source and the source's spouse, who worked at Naval Air Station (NAS) Jacksonville in the personnel office that issues military identification cards.[1]  The source reported that Zumba asked whether the spouse would be willing to issue real, but unauthorized ID cards for an under-the-table payment. Zumba advised that the cards would be for unspecified individuals from China.

Acting at the direction of federal agents, the source proceeded to engage in a series of communications with Zumba during which they discussed Zumba's plan to obtain unauthorized ID cards in exchange for cash.  (Zumba also solicited the source and the source's spouse to join the marriage fraud scheme, for which they would each receive $10,000 cash up front, and $35,000 total after each divorced their Chinese national spouse.)  After driving from New York, Zumba arrived in Jacksonville on February 13, 2025, with Chen, Feng, and Cheok.  Zumba brought these individuals onto NAS Jacksonville where the source's spouse let them into the personnel office after business hours and initiated the process for Chen and Cheok to receive ID cards.

---

[1]    Zumba has also separately pleaded guilty to bribery of a public official in Case No. 3:25-cr-44-HES-MCR.

5

The following day, Zumba, Chen, and Feng met with the source over lunch. (Cheok had already returned to New York.)  The source gave Zumba the two cards in exchange for $3,500.  Zumba and the source discussed the prospect of obtaining military IDs for other Chinese nationals in the future.  At the end of the lunch, Chen gave the source an additional $100 in cash as a "tip" to keep the "door open" for future transactions. Law enforcement then detained Zumba, Chen, and Feng, and recovered the cards.

A.    *Nature and Circumstances of the Offense Conduct*

The conduct alleged in the Indictment is serious, and supports detention. Marriage fraud may not carry a mandatory minimum sentence or significant offense levels under the United States Sentencing Guidelines, but it is a crime that threatens national security and financial institutions, and subverts the Immigration and Nationality Act (INA) and other laws that establish rules for who can enter, live, and become a permanent resident or citizen of the United States.  Because spouses are immediate relatives who have special immigration priority, individuals who pretend to be legitimate spouses of an Americans in the immigration process can obscure their identity, gain employment unlawfully, and open bank accounts or businesses to conduct criminal activity.  Further, as indicted by the allegations in the Indictment, the conspirators' focus on marrying Chinese nationals to military servicemembers and obtaining identification cards adds an additional layer to the potential threat to national security.

6

Chen, Feng, and Cheok's participation in the bribery scheme further supports the conspirators' intent to obtain access to military facilities, putting national security at risk. According to messages translated from Chinese obtained through the investigation, Chen messaged Deng from Jacksonville after her after-hours visit to NAS Jacksonville, expressing her excitement at obtaining a military dependent ID because, among other things, "I can go to any military base at any time with this card," and that she could obtain free medical care and shop on base.

B.    *Weight of the Evidence*

The evidence in the case is strong and therefore tends to support detention. *See* 18 U.S.C. § 3142(g). As set forth above, four defendants in the related cases have already pleaded guilty, including the sham marriage "spouses" of defendants J. Chen (Chambers), Fan (Bailey), Wang (Urena), and Xie (Zumba). Fang's putative spouse, former Navy servicemember Kiah Holly, is also charged in the Indictment. Zumba and Urena have admitted to acting as "recruiters" for the conspiracy, identifying U.S. citizens who would be willing to marry Chinese nationals for money. Multiple individuals have cooperated in the investigation, providing evidence and statements supporting the allegations in the Indictment. Law enforcement has collected voluminous incriminating message threads and pictures that support the allegations above, from searches of devices and materials collected through cooperation. Additionally, law enforcement made numerous consensual recordings of Zumba discussing the marriage fraud and bribery conspiracies, as well as surveillance

7

footage from the sting operation at NAS Jacksonville.

Chen and Feng were interviewed in Jacksonville after the sting operation in February 2025. Chen admitted that she knew she was not lawfully able to obtain a military dependent ID, and, after initially denying that the conspirators were going to pay for the cards, admitted she knew money was going to be paid to the source. A cooperating defendant has since advised law enforcement that Chen provided the bribe funds to Zumba, which had been supplied by Cheok. Chen denied knowing about individuals engaging marriage fraud, though she acknowledged that she had assisted individuals with immigration applications and that marriages had to be "real" – establishing that her role in arranging sham marriages was willful.

Feng admitted that Chen had asked her to come to Jacksonville to translate while they went onto the naval base to obtain identification cards. Not realizing the nature of the sting operation, Feng initially lied to law enforcement by denying anyone other than Zumba, Chen, and herself had come onto NAS Jacksonville. After being confronted, Feng then admitted Cheok's presence, stating that she tried to protect him because he was their customer. Feng acknowledged hearing about U.S. citizens being paid to marry Chinese nationals before, but denied that she or Chen was involved. Feng did state she had heard Zumba mention that he was possibly referring friends to marry people.

While the weight of the evidence is not presumptive, it can be a factor weighing against release. *United States v. Fishenko*, 12-CR-626, 2013 WL 3934174, at *2 (E.D.N.Y. July 30, 2013).

   C. *History and Characteristics*

The defendants' history and characteristics also demonstrate that they are a very real risk of non-appearance. 18 U.S.C. § 1342(g)(3).

Anny Chen is a naturalized U.S. citizen originally from China, and she maintains significant ties to her country of origin. The investigation and the conduct alleged in the Indictment indicates she is in communication with numerous Chinese nationals, including those who are attempting obtain immigration status unlawfully. A cooperating defendant further advised that Anny Chen stated she owns property in China. Chen and Zumba traveled to Hong Kong and Malaysia together in or around December 2024, where they met with Feng and engaged in marriage fraud-related activities according to messages obtained through the investigation and cooperator statements.

Feng is a Chinese national with legal permanent resident status in the United States. She is married to a United States citizen. As set forth above, she made false statements (which she later corrected) in her voluntary interview in February 2025, and has traveled overseas

Deng is a naturalized U.S. citizen originally from China. He is active-duty Navy, currently stationed aboard a ship assigned to Yokosuka, Japan. He was

arrested in New York while on leave.  As noted above, he facilitated his sham marriage partner obtaining a military dependent ID while he was stationed overseas and she was in the United States.  Deng also provided Chen with guidance as to how to obtain military dependent IDs for other conspirators.  At this time, it is unknown what action if any the Navy will take as to his deployment status as a result of the felony charge in this case.

J. Chen, Xie, Wang, Fan, Fang, and Cheok[2] are all Chinese nationals without any sort of permanent resident status.  According to Immigration and Customs Enforcement:  J. Chen has overstayed an F-1 student visa and is subject to immigration detention; Fan has overstayed a B-2 travel visa and is subject to immigration detention; Wang has a pending I-589 application for asylum; and Fang and Xie have temporary status thanks to the fraudulent I-485 applications submitted through their sham marriage to Holly and Zumba, respectively, and are potentially subject to immigration detention.[3]

---

[2]    Cheok was arrested and ordered detained in the Southern District of New York on or about January 6, 2026, during Rule 5 proceedings for an unrelated case in the Northern District of Illinois.  *See* Case No. 1:26-mj-16 (S.D.N.Y.).

[3]    Eleventh Circuit precedent is consistent that while an immigration detainer does not create a presumption of detention, but existence of one can still be considered as a factor in a court's detention decision.  *See United States v. Garcia-Chagala*, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017); *see also United States v. Alverez-Lopez*, 2014 WL 2563646, at *4 (M.D. Fla. June 6, 2014); *United States v. Al'Sagga*, 2014 WL 252035, at *3 (S.D. Fla. Jan. 7, 2014) ("although not presumptively determinative, the fact that a defendant has an ICE detainer is also a factor to consider when evaluating the appropriateness of the pretrial detention.").

All nine of these defendants are originally from China – a nation that does not cooperate with U.S. law enforcement – and therefore, little is known about their "past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . ." 18 U.S.C. § 3142(g)(3)(A). Further, they necessarily have significant personal ties to China, a non-extradition jurisdiction, which is a factor supporting detention. *See*, *e.g.*, *Quartermaine*, 913 F.2d at 916-17 (noting the defendant's travel and family/business ties to foreign jurisdictions supported detention). Allowing them to remain at liberty, even with the most stringent pretrial measures, would still pose a substantial risk of flight. Within hours, any/all of the defendants could travel north, cross the border to Canada, and fly to China without United States law enforcement being able to intervene. "Neither electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F. Supp. 2d 1236, 1244 (M.D. Fla. 2007) (Merryday, J.) (citing *United States v. Benevolence Int'l Found., Inc.*, 222 F. Supp. 2d 1005, 1007 (N.D. Ill. 2002)). "Even attentive and persistent monitoring of personnel of Pretrial Services leaves the possibility of some hours' delay in both notifying law enforcement of a releasee's departure and beginning an effective search with the aid of a warrant and other essential aids to investigation and pursuit." *Megahed*, 519 F. Supp. 2d at 1244. Flight to China would then insulate them from extradition to face justice. The United States, therefore, submits that this factor strongly supports detention.

11

III.    **<u>Conclusion</u>**

The defendants each pose a significant risk of flight such that no combination of conditions will ensure their appearance before the Court. For the foregoing reasons, each of these defendants should be detained pending trial.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    <u>*/s/ David B. Mesrobian*</u>
DAVID B. MESROBIAN
Assistant United States Attorney
USA No. 188
300 N. Hogan Street, Suite 700
Jacksonville, Florida 32202-4270
Telephone:    (904) 301-6300
Facsimile:    (904) 301-6310
E-mail:        david.mesrobian@usdoj.gov